SUTLIFF, demandant, *against* FORGEY, tenant.

PLACITA, of *August* term, 1821.

Washington County, ss. *Sarah Sutliff*, widow, who was the wife of *Richard Sutliff*, deceased, by *John Crary & John Mc Lean, Junior*, her attornies, demands against *Phillip Forgey*, the third part of ten messuages, ten barns, ten

Count in dower *unde nihil habet.*—Plea in bar, that demandant is an alien. Replication, that she and

her husband came to this state in 1786, with intent to become citizens, and resided here till his death, in 1820: That her husband was naturalized August 29th, 1803, and that he purchased the premises in question, not exceeding 1000 acres, January 4th, 1804. *Held*, that this purchase enured to the demandant's benefit; and a right of dower then vesting in her, and she having done nothing to divest it, she is entitled to recover. This is by the statute of 1802, 2. *R. L.* 542.

The alien widow of a natural born citizen cannot be endowed; and it follows, that the alien widow of a naturalized husband cannot be endowed, independent of the statutes authorizing aliens to purchase and hold real estate.

*It seems*, that the widow does not take as *purchaser, heir, assign*, or under any other word used by the statutes expressly to designate the person intended to take, but rather under a *constructive* right as *purchaser*, within the general spirit and object of those statutes.

A conveyance to husband and wife makes them neither joint tenants, nor tenants in common; but both are seised of the entirety; and neither can alien, without the consent of the other, and on the death of one, the whole will go to the survivor.

A wife cannot purchase, except through the medium of her husband.

A right to dower, is an interest in lands, contingent, during the life of the husband, but rendered absolute by his death.

But it is a right resting in action merely, and cannot be so aliened, as to enable an assignee to bring an action in his own name; although it may be released.

The right to dower is incident to, and inseparable from the estate acquired by the husband.

Naturalization, merely removes the disability of the alien to hold, leaving a right in the government to enter, if he dies, without heirs, or leaving alien heirs only.

by referring to *a running at large in the common lands of towns*, and did not extend to *highways*. They reason thus: " Did the legislature mean to touch rights protected by the common law? I may ask another question: could they do so, if they were disposed, (which is a case never to be supposed) without making compensation to the owner? Take the case of a fruit tree, standing in the road, but in a situation to afford a convenient shade to the traveller; an ornament, but not a nuisance, to the way; and yielding an annual profit to the owner of the soil. Now, the legislature might, if they thought it expedient, provide, by law, that, for the future, the soil of all highways, that should be laid out, should be vested in the publick; and compensate the owner accordingly. But what constitutional right would they have to divest the owners of the soil of rights remaining, in respect to ways heretofore laid out?" (*Id.* 36-7.) Again: " The pasturage never made any part of the inducement or reason for laying out highways." (*Id.* 37, and vid. the book last quoted, 35-6, for a history of the statutes of *Massachusetts*, on this subject.)

NEW-YORK,
May, 1823.

SUTLIFF
v.
FORGEY.

stables, four gardens, four orchards, one water corn mill, two thousand acres of land, two hundred acres of meadow, two hundred acres of pasture, two hundred acres of wood land, and two hundred acres of land covered with water, with the appurtenances, in the town of *Salem*, in the county of *Washington*, as the dower of the said *Sarah Sutliff*, of the endowment of the said *Richard Sutliff*, deceased, heretofore her husband, whereof she hath nothing, &c. (*Imparlance in the usual form, to the 3d Monday of October,* 1821. *Vid. the proceedings in appearing, counting, imparling, &c. ante,* 10 *to* 13.)

Plea, that the demandant is an alien.

And the said *Philip Forgey* says, that the said *Sarah* ought not to have dower of the tenements aforesaid, with the appurtenances, of the endowment of the said *Richard*, her late husband, because he says that the said *Sarah Sutliff* is an alien, born in foreign parts, to wit, in *Ireland*, out of the allegiance of the state of *New-York*, and of the *United States of America*, and within the allegiance of a foreign Sovereign, to wit, the *King of Great Britain* and *Ireland*, and this the said *Philip* is ready to verify; wherefore, he prays judgment, if the said *Sarah* ought to have and maintain her

The expresssion, in our statute, is, *to go at large.* This is contained in the same sentence which gives town meetings the power to manage the common lands of the town. Indeed, the history of these rights of common, and the powers of towns, in relation to them, and *to cattle going at large,* is much the same with us as in *Massachusetts,* as any one will see by consulting 1 *Smith & Livingston,* 428, act of 1750, *s.* 7, and *Van Schaick,* 291. *Jones & Varick, vol.* 2, 337, act of 7*th March,* 1788, *s.* 15, give the words on this subject, as found in all the subsequent revisals. The subject of cattle, &c. going at large, is mentioned, I believe, for the first time, in the page last cited from *Jones & Varick.* It may well refer, and probably does so, to a running at large on the *common lands* of the town, for the purposes, of *pasturage.* Here, and here only, can the town, *of right,* interfere. In the strong, though correct, language of the case in *Massachusetts,* it may well be doubted, whether the legislature, themselves, acting *directly* on this question, could interfere with the vested rights of soil, by giving more than a mere right of passage along our highways. At any rate, they would, in such case, express themselves clearly, and not merely by doubtful implication. (16 *Mass. Rep.* 36.) In this state, if done at all, it is not only through a power doubtfully expressed, but delegated and indirect.

The following rule, exceptions and remarks, are, among other matters, deducible from the authorities above considered, viz :

aforesaid action thereof, against him, &c. (*Imparlance to the 1st Monday of January*, 1822.) And the said *Sarah Sutliff* says, that she ought not, by any thing in the plea of the said *Philip Forgey*, above alleged, to be barred from having her aforesaid dower in this behalf; because she says, that, although she, the said *Sarah*, was an alien, born in *Ireland*, within the allegiance of the *King of Great Britain*, yet she, together with the said *Richard Sutliff*, her said husband, in his life time, to wit, on the 21st day of *July*, 1786, came from *Ireland* aforesaid, to the state of *New-York*, within the limits, and under the jurisdiction of the *United States of America*, with the intention of becoming citizens thereof; and have since that time resided within such limits, and under such jurisdiction, until the death of the said *Richard Sutliff*, to wit, on the 30th day of *November*, 1820, at the town of *Salem*, and in the county of *Washington*, and during all that time, the said *Richard Sutliff*, and the said *Sarah Sutliff*, have behaved as persons of good moral character, attached to the principles of the constitution of the *United States of America*, and well disposed to the good order and happiness of the same. And on the 29th day of *August*, 1803, the said *Richard Sutliff*, being a free white person, was duly naturalized, and admitted by the Court of Common Pleas, of the

Replication admits that the demandant was an alien, but shews that her husband was naturalized.

Naturalization (by the court of common pleas) pleaded.

*Every man is bound, under peril of being accounted a trespasser, to keep such animals as are the subject of absolute property, upon his own soil.*

Exc. 1. He may drive, or otherwise convey them along the publick highway, for the mere purpose of passage; but he may not put them there for any other purpose; nor can the town authorize him to do so, by a by-law. And, in exercising this right of passage, he will not be liable in damages, if he exercise ordinary care in keeping them along the way, though they may escape into the adjoining close, if he make fresh pursuit, and use proper endeavours for their return.

Exc. 2. He is not accountable to the tenant of the land adjoining his, for the escape of such animals as are commonly restrained by ordinary enclosures, provided they escape through that part of the partition fence, which such tenant is bound to repair, either by assignment of the fence viewers, agreement, or prescription. But if, in such case, they wander from the adjoining close, upon that of a third person, he is accountable, though it be through the fence of the latter, which he is bound to repair, and which is insufficient to restrain them; and, if the owner is thus made liable in damages, or his animals are distrained by such third person, his remedy is against his adjoining tenant, by action on the case.

NEW-YORK, county of *Washington*, held at the court house in the town
May, 1823. of *Salem*, in and for said county, before the Judges and As-
SUTLIFF sistant Justices of the same Court, to become a citizen of the
v. *United States*, according to an act of the first session of the
FORGEY. seventh Congress of the *United States*, entitled " an act to
establish a uniform rule of naturalization, and to repeal the
acts heretofore passed on that subject ;" as, by the record
and proceedings thereof, remaining in the said Court, more.
fully appears. And the said *Sarah Sutliff* further saith, that,
afterwards, to wit, on the 4th day of, *January*, 1804, she, to-
gether with the said *Richard Sutliff*, in his life time, having
come to this state, and become inhabitants thereof, accor-

The deman- ding to the true intent and meaning of an act of the Legis-.
dant also lature of the state of *New-York*, entitled " an act to enable
claims to hold
under the act aliens to purchase and hold real estate, within this state, un-
to enable al- der certain restrictions therein mentioned ;" the said *Rich-*
iens to pur-
chase and hold *ard Sutliff*, on the said 4th day of *January*, 1804, at the town
real estate. of *Salem*, and in the county of *Washington*, aforesaid, pur-
chased the messuages and lands aforesaid, with the appurte-
nances, not exceeding one thousand acres ; and this she, the
said *Sarah Sutliff*, is ready to verify—wherefore she prays
judgment and her damages, to be adjudged to her, &c.

General demurrer and joinder.

*D. Woods,* in support of the demurrer. 1. It is not aver-
red, by the replication, that the demandant became a citizen
(a) 1 Ch. Pl. by virtue of her husband's naturalization. This is left to
587. 2 H. Bl. legal inference, which is not traversable.(a)
182. 1 Saund.
23, n. 5. Com. 2. The naturalization of the husband did not confer the
Dig Pleader, right of citizenship on her.
(G. 5.)
A woman, born and resident in *Ireland*, in 1776, though
(b) Kelley v. her husband resided here, is an alien, and not entitled to
Harrison, 2 dower, unless afterwards naturalized.(b) The cases men-
John. Cas. 29.
(c) 2 John. tioned by *Kent, J.*(c) in which her residence might have fol-
Cas. 32. lowed her husband's, *constructively*, and she be deemed nat-
uralized, though she was, *in fact*, abroad in 1776, rest upon
the effect of the declaration of independence. Had she been,
at the time of that declaration, a constructive resident here,
she would have been naturalized, like any other citizen, in

her *own right* because all persons *then* located here, became citizens. No other foreigners can become citizens, unless they are naturalized under the existing laws. The act of Congress, 14th *April*, 1802, *ch.* 288, *s.* 4,(d) extending the naturalization of the parent to resident children under 21, is no argument for extending the same privilege to the wife.(1) For it is a settled rule of construction, that whenever an express enactment confers a privilege on a particular class of people, all *others*, not included in the *words* of the act, are excluded.(e) *Expressum facit cessare tacitum.*

Again; if the demandant became a citizen, it was by implication. She might have disavowed her citizenship, at her husband's death; for it will not be pretended, that even a married woman can be naturalized against her will. Her residence is averred in the replication to be, " till the death of" her husband. It is to be inferred, that she *then* changed her domicile, according to the maxim in pleading, that if the words be equivocal, they shall be taken most strongly against the party using them.(f)

Being an alien, then, the demandant cannot maintain this action.(g) And the rule is general, that an alien may take, by *purchase*, but not by *act of law*, as by descent, curtesy, dower, or guardianship.(h) And this was the reason why a special act was passed, to enable *Beatrice, Countess of Arundel*, born in *Portugal*, to demand her dower, as mentioned in *Bac. Ab. Aliens, C.* in *note, Phil. ed.* of 1813, and in *Harg. Co. Litt.* 31, *b. n.* 9.

The statute, enabling aliens to purchase, which is relied upon, does not provide for the demandant's case. It is confined to the purchaser and his heirs.

*J. Crary*, contra. 1. It is conceded, that an alien cannot take real property by *act of law ;* which will not transfer it to one who must immediately give title to *another*.(i) And the English rule relied on, is, that if a man, seised, &c. take

*Leslie,* 3 *Wheat.* 594, 597. *Orr* v. *Hodgson*, 4 *Wheat.* 453, 460. *Blight* v. *Rochester,* 7 *Wheat.* 585. *Jackson* v. *Lunn*, 3 *John. Cas.* 120, 121.
(i) *Cruise* on R. *Prop. Tit.* 5, *Curtesy, ch.* 1, *s.* 27.

(1) Vid. 3 *Laws U. S. Phil. ed.* 1815, *p.* 615, *ch.* 400, *s.* 2.

NEW-YORK, May, 1823.

SUTLIFF v. FORGEY.

(d) 3 *Laws U. S. Phil. ed.* 1815, 478.

(e) 2 *Bl. Rep.* 1145.

(f) 1 *Ch. Pl.* 241.
(g) 1 *Cruise* on R. *Prop. tit.* 6, *ch.* 2, *s.* 30. 1 *Bac. Ab. Alien*, (C) (D) 2 *ibid. Dower,* (A) 7 Co. *Cal-vin's Case*, 1, 49. Co. *Litt. s.* 198, 129, *b. Harg. Co. Lit.* 31, *b.* 2 *Dyer*, 2, *pl.* 8. 1 *Bl. Com.* 373. 2 *Sell. Prac.* 298. *Harrison* v. *Kelley*, 2 *John. Cas.* 29.
(h) *Ventr.* 417. *Mol.* 464. 7 Co. 25, 49. Co. *Litt.* 2, 6. *Fairfax* v. *Hunter,* 7 *Cranch*, 619, 629. *Craig* v.

an alien to wife, and die, she shall not be endowed.(*j*)   At
the first view, it seems difficult to perceive, why the alien wid-
ow of a naturalized, but not of a natural born, citizen, should
be endowed.   But the estate must vest somewhere.   The on-
ly reason why it does not go to the heir, on the alien's death,
is, because it vests in the people.   But here, they having,
by an act of naturalization, divested themselves of this
right, the reason of the common law rule ceases, and the dif-
ficulty disappears.   The marriage, with the natural born
subject, is not equivalent to the statutory naturalization of
the husband, after marriage.   An alien cannot be endowed;
(*k*) but the naturalization of the husband, after marriage, is
an endowment, by act and operation of law.   This must re-
sult from the condition of the wife, and her incapacity to
acquire or grant any rights during coverture.   The law gives
a right to the ceremony of naturalization, to free persons
only; and coverture is a species of duress.(*l*)   The 4th
section of the act of Congress, cited on the other side, pro-
vides, that children, under age, of a naturalized alien, shall
be considered citizens.   This is without any act of their
own, and infancy is not more a disability than coverture.
Indeed, it does not operate so injuriously.   It is temporary;
and naturalization, on the child's coming of age, will retro-
act, and confirm any former title.(*m*)   Not so of the wid-
ow.   Her dower vests in the heir or the people :   and it fol-
lows, from the reasoning on the other side, that her disabil-
ity is perpetual.   During coverture, she cannot be naturali-
zed, and afterwards, naturalization is nugatory.

Again : an estate, in dower, is a continuation of the in-
heritance.(*n*)   The right of dower extends to all lands in
the seisin of the husband, during coverture, which may,
possibly, descend to his heir.(*o*)

2.   A summary of the statutes of this state, enabling al-
iens to hold real property, will be found in 2 *R. L.* 541
to 544, inclusive.   By the last section, those aliens, who are
authorized to acquire real estate, by purchase, may, also,
take by *devise* or *descent*, which include title by *dower*.

(*j*) *Co Litt.*
31. 2 *Bl. Com.*
130.

(*k*)2 *Bl. Com.*
130.

(*l*)1 *Bl. Com.*
443. *Co. Litt.*
112.

(*m*) *Jackson*
v. *Beach*, 1
*John. cas.* 399.

(*n*) *Woodf.*
*Land.* & *Ten-*
*ant*, 55 & 6.
*Co. Litt.* 240.

(*o*) *Litt. s.*
36, 53.

WOODWORTH, J. It is well settled, that, if a woman alien marry a subject, she shall not be endowed; because, by the policy of the common law, all aliens are disabled from acquiring a freehold. (1 *Bacon, tit. Aliens*, 136. 2 *Black.* 131. 7 *Coke*, 25. *Co. Lit.* 31.) Naturalization merely removes the disability of the alien to hold: it leaves, unimpaired, the right of the government to enter, if the person naturalized die without heirs, or leaving alien heirs only.

It is laid down, in 1 *Bacon*, 130, *tit. Aliens*, b. and 2 *Black.* 250, that, if a man be naturalized by act of parliament, he, in all things, inherits, like a natural born subject. Sir *William Blackstone*, (1 *vol.* 374,) considers, that, by naturalization, the alien is put in exactly the same state, as if he had been born in the king's legiance. It is, therefore, manifest, that the naturalization of the husband does not remove the disability of the alien wife to be endowed. Her right cannot be greater than it would have been had the husband been a natural born citizen.

By the act of Congress, of *April* 14, 1802, the children of persons naturalized, being under 21 years, and dwelling in the *United States*, are considered as citizens; but there is no provision in favour of the alien wives of such persons.

But, it is contended, that the demandant is protected by the act to enable aliens to purchase and hold real estates within this state, passed *April* 26, 1802, and the act to extend the same, passed *April* 8, 1808, (2 *vol. R. L.* 541, 543.)

The first act declares, that all purchases of land, made or to be made, by any alien, who has come to this state, and become an inhabitant thereof, *shall be deemed valid, to vest the estate to him granted;* that he may dispose of and hold the same to his heirs or assigns.

By the last act, all persons authorized, by the act extended, to acquire real estate, by purchase, may, also, take and acquire by devise or descent. When the premises, in question, were purchased, in 1804, the demandant, although an alien, had the capacity to take. If the premises had been conveyed to *Richard Sutliff* and his wife, they would have taken, not as joint tenants, nor as tenants in common, (for being considered as one person, in the law, they cannot take

by moieties,) but both would have been seised of the entirety ; so that neither of them could have disposed of any part, without the assent of the other : the whole would have gone to the survivor. (16 *John.* 115. 2 *Black. Com.* 183. *Co. Litt.* 187. 2 *Ver.* 120.) But the conveyance was made to the husband, only ; and the question is, whether this can be considered, within the meaning of the act, a purchase made by the wife, so as to secure her claim of dower. By the act of 1808, all persons authorized to purchase, are allowed to take by *devise* or *descent.* These words will not include the claim of *dower.* No devise appears to have been made, and the wife cannot take, by right of representation, as heir at law to her husband. The demandant was authorized to purchase, but a purchase cannot be effected by her, except through the medium of her husband. The act must have intended this mode of acquiring, or, as to her, it becomes a dead letter. The intention of the legislature was to encourage aliens to settle in this state, by removing the disability of alienism. The property purchased, is secured to the alien purchaser, his heirs and assigns : he is allowed to take by devise or descent. The claim of dower was entitled to equal favour ; and, no doubt, it was intended by the act to protect it. This intent, I admit, is to be collected from the act itself—unless that will sanction the claim, however hard the case, it cannot be allowed.

The right to dower, is an interest in lands. When the conveyance was made to the husband, in 1804, this interest was contingent, it is true, but it was a right known and recognized by the law, and became absolute on the death of the husband. It is a right resting in action only, and cannot be so aliened as to enable the grantee to bring an action, in his own name, although it may be released. (17 *John.* 169.) It cannot, I think, on any principle of sound construction, be said, that the demandant is not a purchaser of this right of dower, as clearly as that her husband became seised of the fee. The deed, to the husband, necessarily enured to the benefit of the wife, so far as to secure to her such right, in the premises, as she would have taken had she not been an alien.

The right to dower is incident to, and inseparable from the estate acquired by the husband. My conclusion is, that the purchase by, and conveyance to the husband, constituted the wife a purchaser, within the meaning of the act, and, consequently, that the demandant is entitled to judgment.

SAVAGE, Ch. J. If a man, seised of lands, take an alien to wife, and die, the widow cannot be endowed.(p) And as the laws, authorizing the naturalization of aliens, give no greater privileges to the naturalized alien, than the natural born citizen enjoys, it seems to follow, that the alien widow of a naturalized husband cannot be endowed. The naturalization of the husband does not naturalize the wife, nor such children as are above the age of twenty-one, at the time of the naturalization of the father.

But the statute of this state, passed *March 26th*, 1802, (q.) enacts, " that all purchases of land made, or to be made, by any alien or aliens, who have come to this state, and become inhabitants thereof, shall be deemed valid to vest the estate to them granted ; and it shall and may be lawful to, and for such alien or aliens to have and to hold the same, to his, her or their heirs or assigns forever, and to dispose of the same, any plea of alienism to the contrary thereof notwithstanding; provided, that any purchase hereafter to be made, by any such alien, does not exceed one thousand acres." The premises in question were purchased by the husband of the demandant, in *January*, 1804. I am satisfied, that this purchase enured to the benefit of the demandant, within the equity and spirit of the act. She then had capacity to take an estate. That capacity has never ceased to exist. Her right to dower attached when her husband made the purchase, and she has done no act to divest herself of it. She is, therefore, entitled to recover.

SUTHERLAND, J. concurred.

Judgment for the demandant.