## WRIGHT *v.* SADDLER.

The alienage of a husband does not prevent the vesting in him, upon the death of his wife, of the entire estate in land conveyed in fee to himself and wife, subject only to the paramount right of the people upon office found or escheat.

The provision (1 *R. S.*, 720, § 17), that an alien shall not be capable of taking or holding land conveyed or devised to him, previous to his making the deposition therein mentioned, is a limitation of the preceding sections, and prevents his title thus acquired being good as against the people, but does not impair the common law rule.

The statute (1 *R. S.*, 720, §§ 15–19) enables a resident alien, who has filed the required deposition, to take and hold lands by descent—of which he was incapable at common law—and by devise—which in the absence of an enabling act, is against the statute of wills—and also renders the land descendible to his heirs inhabiting the United States, in case of his death within six years.

The 17th section restricts the operation of the others, to lands acquired after the filing of the deposition, and leaves the common law in force as to lands previously acquired, and as to aliens who have not complied with the statute.

APPEAL from the Supreme Court. This suit was brought in 1857, to recover fifty-eight acres of land, situated in the county of Erie. At the trial, before Mr. Justice DAVIS, a verdict was taken for the plaintiff, subject to the opinion of the Supreme Court, on a case to be made, and that court gave

judgment for the plaintiff. The defendant appealed to this court.

Rhodes Stranahan died in 1843, seised in fee of one hundred and seventy-five acres, of which the premises in question are a part. His only children and heirs were: Elizabeth, wife of Peter Miller; Margaret, wife of E. D. Bivins, and Angeline, wife of Erastus B. Wright. Mr. Wright was an alien. In July, 1844, the heirs made an agreement for the partition of the land; and in pursuance thereof, Miller and wife, and Bivins and wife, by a quit-claim deed, dated July 23, 1844, conveyed the fifty-eight acres in question to the said Wright, and Angeline his wife, their heirs and assigns forever. In June, 1844, Wright and wife removed to the State of Wisconsin, where they resided until they died. In August, 1844, Wright filed in the clerk's office, in Erie county in this State, the usual declaration of intention to become a citizen, but filed no deposition, declaring such intention, in the office of the Secretary of State. Mrs. Wright died without issue, in January, 1845. One of the sisters, Mrs. Miller, died without issue, shortly before Mrs. Wright, and the mother, Mrs. Stranahan, died about the same time; but whether before or after the death of Mrs. Wright did not appear. Either Mrs. Stranahan, the mother, or Mrs. Miller, the surviving sister, was the sole heir of Mrs. Wright. If Mrs. Stranahan died after Mrs. Wright, she inherited; and in that case Mrs. Miller inherited from her. If before, then Mrs. Miller inherited directly from Mrs. Wright. The defendant was in possession at the commencement of the suit, claiming title thus: Miller and wife, in 1853, being in possession of the fifty-eight acres, conveyed the same to one Utley, who afterwards conveyed to the defendant.

Mr. Wright married a second wife, in May, 1845, and died in September following. The plaintiff is an infant, and is the posthumous issue of that marriage. Before the death of the first Mrs. Wright, she made a will in the State of Wisconsin, whereby she undertook to dispose of the premises in question, as follows: "And all the real estate which I may hold at the time of my decease, left to me from my father's estate, I give

and devise to my said husband, Erastus B. Wright, to have and to hold the same to him and his heirs forever, should he ever have children of his own; but should he have no issue, the residue, should there be any remaining at his decease, to the children of my sister, Eliza Miller." In 1853, the Legislature of this State passed an act declaring that the State released to the plaintiff all the real estate in Erie county, "heretofore conveyed or intended to be conveyed to Erastus B. Wright and Angeline his wife, or subsequently devised, or intended to be devised, by the said Angeline Wright, to the said Erastus B. Wright and his children." Such other facts in the case, as are material to the questions considered, are stated in the opinion of COMSTOCK, J. The case was submitted in this court on printed arguments.

*John Ganson*, for the appellant.

*William C. Bryant*, for the respondent.

COMSTOCK, J. On the death of the ancestor, Mr. Stranahan, the fee in one undivided third part of the land in question became vested in Angeline Wright, as one of his heirs. Her husband, but for his alienage, would have been a tenant by the curtesy in respect to the same interest, provided there had been a child of the marriage; and if there had been no child, he would still have taken *jure uxoris* a freehold estate during his own life if he died before his wife, and during her life if he survived her. (2 *Kent Com.*, 130.) For the defendant it is contended that, apart from the disability of alienage, Mr. and Mrs. Wright took respectively the same interests in the other two-thirds of the premises, by virtue of the partition deed, executed to them by the other daughters and their husbands. That deed, it is urged, must be construed with reference to the previous interests of the parties, and to the object which all the heirs had in view, and which is assumed to have been simply and merely to effect a partition without changing or enlarging the interests of the husbands in any portion of the lands descended to their wives. The

construction suggested is certainly a plausible one, and it is extremely probable that it would conform to the actual intention which all the parties had. But, I think, we cannot give this interpretation or effect to the conveyance. The primary object no doubt was a simple partition, but that object was attainable, and would have been accomplished by deeds in which the heirs alone were named as grantees. Under such deeds the husbands would have held their marital rights and interests by the law of the land; and it was quite unnecessary, with that object merely in view, to name them as joint grantees with their wives. But in the conveyance actually made, the grant is in precise and technical terms to the husbands and wives, and their heirs forever. We may very well suppose that something else was meant. But that supposition rests wholly upon the external circumstances, and is directly opposed to the language of the deeds, which were quite likely drawn and executed under the influence of confused and inaccurate notions of the law. There seems to be no room for an unusual construction, and we must therefore hold that by force of the deed from the other daughters and their husbands, a fee in the undivided two-thirds of the premises in question was conveyed jointly to Mr. and Mrs. Wright. As to the other one-third the fee was already in Mrs. Wright by descent, and her husband could have only the special freehold interest above mentioned.

Regarding then the deed to Wright and his wife as a conveyance to them of the undivided two-thirds of the premises, and still keeping out of view the question of alienage, the effect of the deed was to vest in Wright the entire interest in that two-thirds on the death of his wife. No joint tenancy, it is true, was declared in the terms of the conveyance, and the statute (1 *R. S.*, 727, § 44), provides that "every estate granted or devised, to two or more persons, in their own right, shall be a tenancy in common, unless expressly declared to be a joint tenancy." But it appears to be well settled that this statute does not apply to the conveyance of an estate to husband and wife. They are regarded in law as one person, and not as tenants in

common or joint tenants; and when one of them dies the whole estate created by such a conveyance remains in the survivor. (*Torrey* v. *Torrey,* 4 *Kern.,* 430; *Jackson* v. *Stevens,* 16 *Johns.,* 110; *Barber* v. *Harris,* 15 *Wend.,* 615; *Doe* v. *Howland,* 8 *Cow.,* 278.)

We come next to the question, principally discussed in the court below, whether the alienage of Mr. Wright was an incapacity of such a nature that he could not take and hold the interest which, as we have seen, he would be entitled to but for that disability. On the part of the defendant it is claimed that Mrs. Wright, by reason of the alienage of her husband, became entitled to the whole estate which the deed from the other heirs purported to convey. On the other hand it is insisted on behalf of the plaintiff, who is the only child of Mr. Wright, that notwithstanding alienage he took a title which was good until defeated by a proceeding on the part of the State, and that the State having released to the plaintiff its right of escheat her title is now perfect. So far as this question depends on the principles of the common law, it is too well settled to admit of any doubt. At the common law, an alien may acquire real estate by deed or devise, or by any act of purchase, but cannot hold it as against the King or the State. He takes a defeasible title which is good except as against the sovereign power, and good for all purposes except transmission by descent, until judgment against the title is obtained by inquest of office or other proceeding of that nature. The alienage of the purchaser is a cause of forfeiture to the State, which can be established only in a judicial proceeding instituted for that purpose. (*Mooers* v. *White,* 6 *Johns. Ch.,* 365; *Wilbur* v. *Tobey,* 16 *Pick.,* 177; *People* v. *Conklin,* 2 *Hill,* 67; *Wadsworth* v. *Wadsworth,* 2 *Kern.,* 376; 4 *Stephen's Com.,* 40, 41; 2 *Kent Com.,* 54.)

The question to be considered, then, is whether the statutes of this State relating to the acquisition of lands by aliens have abrogated or have left still in force the rule of the common law. The Revised Statutes, in the 15th section of the article concerning "persons capable of holding and conveying lands" (1 *R. S.,* 720), provide that any alien who had come, or there-

Wright *v.* Saddler.

after might come into the United States, may make a certain deposition declaring that he resides and intends always to reside in the United States, and to become a citizen thereof as soon as he can be naturalized, and that he has taken the incipient steps for naturalization. This deposition is to be filed and recorded in the office of the Secretary of State. This section is referred to as it was amended in the year 1834. (*Laws of 1834, ch.* 272.) The next section (§ 16) provides that " any alien who shall make and file such deposition shall thereupon be authorized to take and hold lands and real estate to him, his heirs and assigns forever, and may, within six years thereafter sell, assign, mortgage, devise and dispose of the same," as if he were a native citizen, except, however, that he cannot lease such real estate until he become naturalized. The 17th section declares that " such alien " shall not be capable of taking or holding any lands which may have descended or been devised or conveyed to him previously to his having become such resident and made such deposition. According to the 18th section, the heirs of such alien, being inhabitants of the United States, may inherit his lands as if he were a citizen, provided he dies within six years after the filing of the deposition.

It is claimed, on the part of the defendant, that according to these enactments, and particularly by force of the 17th section, the common law capacity which an alien had, to take lands by purchase and hold them until office found in favor of the State, exists no longer, and consequently that a conveyance to one who has not filed the deposition required by law, fails to vest in him any interest whatever. If this is a correct view of the statutes, one of two results must follow : 1. That any attempt to convey lands to an alien who has not filed such deposition, vests the title and seisin in the State, instantly and without any judicial proceeding to recover the land as an escheat; or, 2. That the conveyance is void leaving the title in the grantor. It has been argued that the deed in such a case is void, but the contrary is, I think, plainly true. In the case of a devise to an alien who is not authorized by any general or

particular statute to hold real estate, such devise is declared by a provision in the statute of wills to be void; and the interest or estate so devised descends to the heirs of the testator if there be any, and if not then it will go to the residuary devisees if there are any competent to take. (2 *R. S.*, 57, § 4.) In this respect, the Revised Statutes have changed the common law by a provision which is free from all doubt. But there is no such provision in regard to any other mode of acquiring title by purchase. If the Legislature had intended that a deed of lands to an alien should also be void, it is not to be doubted that such intention would be declared in plain terms as it is in the case of a will. That has not been done, and the omission to do so is founded upon obvious reasons which need not here be dwelt upon.

The question then is this: At the common law, as we have seen, the title to lands conveyed to an alien vested in him, subject to a defeasance or forfeiture in favor of the State. Is it the result of the statutes which have been quoted, that the title does not vest for an instant in the grantee, but passes directly and immediately to the State? If this be so in general, then I concede that in the peculiar case of a deed to a citizen wife and an alien husband the whole estate will vest at once in the wife. As they are not tenants in common or joint tenants, but are one person in law, in effect constituting but one grantee, the wife must take the whole if the husband is incapable of holding with her. A divided interest in the State and in her could not take place, because an estate thus conveyed is incapable of division. The estate being an entirety vests in the husband and wife as one person, if both are capable of taking, and if not, then in the one who is capable. This is what the defendant insists upon, claiming his title to the whole premises in question under Mrs. Wright.

But I am of opinion, that in the respect under consideration the rule of the common law is still in force, notwithstanding the provisions of the statute which have been referred to. The policy of the enactments, I think, is obvious. It was to enable resident aliens, intending to become citizens, on filing the

Wright *v.* Saddler.

required deposition in the office of the Secretary of State, to hold real estate as though they were in fact citizens; that is to say, free from the right of escheat or forfeiture even in the State itself. This, I am satisfied, was precisely the change in the law which the Legislature designed to make. As the result of that change, an alien who has taken the steps required, and is a resident of the United States, may now take and hold real estate by descent, whereas he could not at the common law; he may also take by devise, which, according to the statute of wills, is impossible without a compliance with the condition; and whether he takes by descent, devise or deed, he does not hold subject to the rights of the State. So by the 18th section, his heirs may inherit from him, provided he dies within a certain period, which was not the case at the common law. The policy of these laws, in short, is liberal and not restrictive. They were not designed to subvert the defeasible rights which the common law conceded to aliens, but to enlarge those rights and convert them into estates of a higher order, on the conditions of residence and an intention to become citizens, to be made manifest by a deposition on oath to be filed in the office of the Secretary of State.

I do not overlook the language of the 17th section, which is supposed to be in conflict with the rule of the common law. This, I think, is not the construction. "Such alien," it declares, "shall not be capable of taking or holding lands which may have descended or been devised or conveyed to him previously to his having become such resident, and made such deposition or affirmation as aforesaid." Now, "such alien" is the resident alien mentioned in the preceding sections, who has filed the deposition therein required; and the object of the provision is precisely to confine the peculiar benefits of these statutes to cases where the lands are acquired after the condition has been performed. As to lands acquired previously, and those acquired by aliens who are not within the statutes at all, by reason of non-residence, or by reason of not having filed the deposition, the common law was left in force. According to the defendant's construction, "such aliens" that is plainly the

resident aliens who alone are mentioned in the context, cannot take lands in any sense, not even subject to the right of escheat, until they thus have filed their deposition as required. This construction leads to a discrimination between resident' and non-resident aliens, unfavorable to the residents, which the Legislature certainly did not intend to make. For while non-resident aliens are not the objects of the statute at all, and may therefore take lands as at common law, those who reside here but have not filed the deposition, according to this argument, are deprived of the capacity which they would have if they remained in the countries where they were born. We may safely conclude that such has never been the policy of this State.

The cases of *Mick* v. *Mick* (10 *Wend.*, 379); *Sutliff* v. *Forgey* (1 *Cow.*, 89, *and in Error,* 5 *id.*, 713); *Priest* v: *Cummings*, (20 *Wend.*, 338), and *Currin* v. *Finn* (3 *Denio*, 229), have been referred to as having some bearing on this subject. I do not find that any of these cases involved the present question. In each of them the common law incapacity of an alien widow to take an estate in dower was recognized; and it became a question, therefore, whether the claimant was entitled according to the equity and just interpretation of the statutes of 1802, 1808 or 1825, enabling aliens in certain cases to take and hold lands. In *Currin* v. *Finn*, the general act of 1825 was referred to, of which the provisions of the Revised Statutes which we are now considering are substantially a reënactment. It being conceded or determined in all these cases that an alien wife or widow had no common law capacity to be endowed, the question could not arise, whether that capacity was limited or annulled or subjected to conditions by any act of the Legislature. At the common law, it was only an alien taking lands by purchase (in the limited sense), gift or devise who could hold them until office found. The act of the law never cast an estate upon an alien, and in such acts, according to the settled doctrine of the books, were included descent, dower and curtesy.

We have arrived, then, at these results: Mrs. Wright inherited from her father one undivided third part of the land in

Wright *v.* Saddler.

question.   The other two-thirds became vested in her and her husband, as one person in law, by virtue of the deed from the other heirs, and on her death the title remained in him as the survivor, subject to the right of escheat in the State. . That right has not been enforced, but on the contrary has been released by the State to the plaintiff.   The title to this land is therefore in the plaintiff, as to two undivided third parts, but not as to the remaining third.   One-third was held by Mrs. Wright independently of the deed from the other heirs, and on her death it descended to her heirs.   The descent to her heirs, plainly, was not prevented by the will which she made in Wisconsin.   The statute of that State, proved on the trial, only enabled her to make a will of lands situated in that State. The devise to her husband was, moreover, void under the provision in our statute of wills already cited, because it was made to an alien.   The consequence is, that the defendant in possession is entitled to an undivided one-third part of the premises.

The Supreme Court, upon the case made at the trial for its consideration, rendered judgment in favor of the plaintiff, for the recovery of the whole of the premises in question.   This was plainly erroneous, because, as we have first seen, the parties are tenants in common.   The defendant, moreover, now insists, that according to this solution of the title the judgment should be given wholly in his favor, on the ground that one tenant in common cannot recover against the other in possession, without proof of ouster; and it is truly urged, that the fact of ouster is not in terms stated in the case.   It appears that the plaintiff in her complaint claimed the whole premises, and she alleged a wrongful entry and eviction by the defendant. The defendant denied in general terms all the plaintiff's allegations, and he affirmatively claimed that he owned the whole. It further appears, that before the suit was brought, a demand of the possession was duly made, and the same refused by the defendant.   It also appears, that Mrs. Miller, the sister of Mrs. Wright, and being entitled by inheritance from her to the undivided third of the premises in question, together with her husband, conveyed the whole by warranty deed to Samuel

Utley, who took possession accordingly, and then conveyed the whole by warranty deed to the defendant; and that the defendant entered into and continued in possession under that title, claiming to own the whole. We do not doubt, that these facts constitute an ouster, so as to entitle the plaintiff to maintain her action, for the two undivided thirds to which she is entitled. (*Clapp* v. *Bromagham,* 9 *Cow.,* 530; *Jackson* v. *Brink,* 5 *id.,* 483; *Jackson* v. *Tibbits,* 9 *id.,* 241; *Town* v. *Needham,* 3 *Paige,* 545; *Siglar* v. *Van Riper,* 10 *Wend.,* 414; *Valentine* v. *Northrop,* 12 *id.,* 494.)

The point which has been made, that a former suit for the same cause, brought by the plaintiff in 1850, against Peter Miller, and the judgment therein in favor of Miller, constitute a bar to this action, scarcely requires to be noticed. Without suggesting other views of this proposition, it will be sufficient to observe: 1. The plaintiff had no title when that suit was brought, because the State had not then released to her its title by escheat. Her father being an alien, could not transmit the inheritance to her, and the title of the State by escheat was complete on his death. 2. If she had any title, Miller and wife were, as we have seen, tenants in common; and the facts which have been mentioned constituting the ouster, had not then occurred. It no where appears that Miller and wife had then denied the right of the plaintiff, if she had any.

The judgment of the Supreme Court must be reversed, without costs in this court, and judgment must be entered, that the plaintiff recover two undivided thirds of the premises mentioned in the complaint.

STRONG, J., dissented; all the other judges concurring,

Judgment accordingly.