By the Court.*—Masten, J.
—From the case, it *369 would seem that the land in question may be recovered by the State as an escheat. At the time it was conveyed to Andrew N. Larreau he was an alien. By subsequently becoming a naturalized citizen of the United States he probably did not defeat the right of the State.
It does not appear that he ever made and filed in the office of the secretary of this State, the deposition required by the statute. But being a citizen at the time of his death, that question does not affect the plaintiff's right to maintain this action.
An alien may take land by grant, and hold it at the will of the State. The State cannot enter upon his possession until the alienism and escheat have been judicially established. Ilis possession and holding being lawful, can only be terminated by the State, and by it only by judicial proceedings.
Land held by an alien, instantly upon his death, without inquest of office escheats and vests by the common law in the State, because the freehold cannot be kept in abeyance, and the alien was incompetent to transmit it by hereditary descent. But where a citizen holds land liable to escheat, and dies, the land does not, as in the case of an alien, vest immediately upon his death in the State ; for, being competent to transmit land by descent, if his heirs enter upon it, their possession is, like his, lawful until the State by judicial proceedings establishes the escheat (Jackson v. Adams, 7 Wend., 367 ; Wright v. Saddler, 20 N. Y., 320).
The law of descent in this State embraces and makes no distinction between the native born and the naturalized citizen. Who are entitled to inherit must be determined by the law and the facts existing at the time of the death of the intestate.
Andrew N. Larreau, at the time of his death, had a large number of non-resident alien relatives by blood, to wit: one sister (the defendant, Mrs. Davignon), three brothers, and several uncles, nephews, and cousins. lie had three relatives by blood who were citizens of the United States, viz: Edward Larreau, the plaintiff’s *370 grantor, who was his second cousin, and Nelson and Phoebe Davignon, children of 1ns sister, Mrs. Davignon. All the persons through whom the said Edward had to trace' his consanguinity with Andrew N. Larreau, were aliens, and died prior to the death of said Andrew.
Prior to 1830, neither of the above-mentioned citizens could have taken by inheritance from Andrew L. Larreau, because a title by descent could not be deduced through a person who was without heritable blood.
By the Revised Statutes it is enacted that no person capable of inheriting under the provisions of the statute shall be precluded from such inheritance by reason of the alienism of any ancestor of such person.
By the settled judicial, construction of this provision of the statute, Edward Larreau is within it, and enabled to inherit, for all the aliens through whom he must deduce his title, were dead at the time of the death of Andrew N. Larreau. And Nelson andPhcebe are not within the statute, because the alien (their mother) through whom they are compelled to deduce title is living (McLean v. Swanton, 13 N. Y. [3 Kern.], 535).
The learned counsel of the defendant pressed upon our consideration, as applicable to this case, and as enabling Mrs. Davignon to take the land in question from her brother .Andrew, the fourth section of chapter 115 of the laws of 1845, entitled “An act to enable resident .aliens to hold and convey rea,l estate, and for other purposes.”- This section is certainly very liberal towards ■certain aliens, by enabling them to transmit • and to take lands by descent.
As has already been remarked, an alien, at the common law, was incompetent to transmit lands by hereditary descent, and therefore immediately upon his death the lands held by him escheated to and vested in the State. If an alien father holding lands died, leaving.a ■citizen son, the descent by reason of the inability of the father, was not cast upon the son, but the lands escheated to the State.
By the section under consideration, a resident alien is *371 enabled to transmit by descent the lands held by him at the time of his death. The section nowhere gives to aliens generally the power to transmit lands by descent; by the clear and express terms of the section, that power is only granted to resident aliens, and in respect to lands acquired by purchase and held by such alien at the time of his death.- The section declares who may take such lands from such alien by descent.
It defines the persons ‘ ‘ toho may ialce and hold as heirs of such deceased alien,” and it places aliens and citizens upon the same footing.
It makes, in the particular case mentioned, alien blood equally heritable with citizen blood.
It, in brief, provides, that lands acquired by purchase and held by a resident alien at the time of his death, shall descend to those persons, whether aliens or citizens, who would, under the statute of descent, take them if the deceased and all such persons at the time of his death had been citizens. Now, the alien relatives of Andrew N. Larreau are not within this fourth section, and are not by force of it entitled to take by descent the lands of which he died possessed ; because he was not at the time of his death an alien, but was a naturalized citizen.
It was urged that he was a resident alien at the time he purchased and took a. conveyance of the land in question. That does not satisfy the act. To come within the provisions of this fourth section he must be an alien at his death, “ a deceased alien.”
It was said that if Andrew N. Larreau had not become a citizen of the United States, the descent of the land in question would have been cast upon his brothers and sister, and that great injustice will be done if -this fourth section is not so construed that their expectations shall not be defeated by William Larreau’s becoming a citizen of the United States. This argument assumes that the act under consideration takes away rights, which is not the fact; it is an enabling act, and grants rights in the case specified. The descent of the land, if changed, is not changed by the statute under consideration, but *372 "by the act of Mr. Larreau subsequent to the passage of the statute.
But if Mr. Larreau had not become a citizen but had died a resident alien, it is not clear that the descent would have been cast upon his brothers and sister, for they were all non-resident aliens.
It is a question not free from doubt, and we do not intend to pass upon it, whether the fourth section of the act of 1845, enables non-resident aliens to. take by descent.
The words are sufficient: but the title and general provisions of the act indicate to some extent that the object of the act is not to overturn the general policy of the government .that aliens shall not take lands by descent, but to carry out that policy which encourages immigration by enabling aliens who come here to assume allegiance to the government, to hold lands while they are qualifying themselves for admission to citizenship, and to transmit, them to those relatives who have, come here for the like purpose. The course of legislation in respect to aliens has not always been consistent with justice and sound policy.
It has conferred the right of dower on the resident alien widow of an alien purchaser and denied it to the resident alien widow of the native born and of the naturalized citizen (Mick v. Mick, 10 Wend., 379 ; Connolly v. Smith, 21 Id., 59; Currin v. Finn, 3 Den., 229).
It has authorized resident aliens to transmit lands to alien heirs, and denied it to the citizen.
, The judgment is affirmed.

 Present, Clinton, Masten, and Verplank, JJ.