William W. Goodrich, Respondent, *v.* Edwin C. Russell, Appellant.

The children of a resident alien, deceased, succeed to his real estate, as heirs, although they are themselves nonresident aliens; the title of such of them as are males of full age being defeasible by the State, however, unless, before the consummation of proceedings instituted for that purpose, they shall file their deposition of intended citizenship, as required by the act of 1845 (Laws of 1845, ch. 115, §§ 1 and 10).

M., a resident alien, having purchased and possessed lands in this State, and given a mortgage thereon, died, in 1864, intestate, without having filed any deposition or affirmation of intention to become a citizen. He left

two sons and one daughter, all of full age, residing in England, and subjects of Great Britain, and collateral kindred who were residents and citizens of the United States. His three children conveyed to W., and subsequently, by act of the legislature, all the rights of this State "acquired by escheat" were released to W., and the conveyance to him confirmed and legalized. Afterward the mortgage was foreclosed, W. and the three children of M., but none of the collateral kindred, being made defendants; and the plaintiff purchased the premises on foreclosure sale. The plaintiff then made a contract for the sale thereof with the defendant, agreeing to give good title. The defendant refused to perform this contract, on the ground that the plaintiff could not convey good title.—*Held*, that the plaintiff's title was good, and he could enforce specific performance of the contract.

The estate descended to the three children of M., the title which descended to the sons, being defeasible, by the State, they being of full age, unless they should file a deposition of intention to become citizens before the consummation of proceedings for that purpose; but the special act o. the legislature made this title valid, even as against the State.

Although statutes relating to the same subject are to be construed together this rule does not go to the extent of controlling the language of a statute by any supposed policy of previous enactments.

(Submitted January, 1870; decided March 25th, 1870.)

Appeal from a judgment of the Supreme Court, entered upon the submission of a controversy, without action, to the General Term of that court in the second judicial district.

Harry H. Marsden, an alien resident of this State, purchased and received a conveyance (in 1863) of certain real estate in the city of Brooklyn. The following year, he mortgaged a portion of the property so purchased. Some months after the execution of this mortgage, he died, intestate. He had never been naturalized, or filed any declaration of his intention to become a citizen of the United States, and had not filed in the office of the Secretary of State any deposition or affirmation of his intention to become a citizen, pursuant to the statute (1 R. S., 720, § 15). He left two sons and one daughter, all of full age, residing in England, and British subjects, and no widow. There were collateral kindred of Marsden, residing in, and citizens of the United States at the time of his death, who were lineal descendants of one Chandler, whose mother was the sister of

Marsden's mother, and who was himself a naturalized citizen of the United States. These collateral kindred were the only heirs-at-law of Marsden, unless his own children were such heirs.

After the death of Marsden, one Wickes procured a deed of bargain and sale of the premises in question, and subsequently, a deed of confirmation and ratification thereof, from his sons and daughter.

An act was afterward passed by the legislature (Laws of 1867, ch. 257), by which all the estate, right, title, and interest of the people of this State, "acquired by escheat," in and to these premises, were released to Wickes; the conveyance to him by Marsden's children is recited and is confirmed and legalized, as though they had been citizens at the time of its execution. Neither of these children had ever resided in the United States, or filed any declaration of an intention to become citizens thereof.

The mortgage executed by Marsden was foreclosed; Wickes and the two sons of Marsden, with their wives, and Marsden's daughter, being made defendants. A decree of foreclosure was entered, barring the defendants of all right and equity of redemption, and the premises were sold; the plaintiff becoming the purchaser, and receiving a deed from the referee who made the sale.

The plaintiff entered into a written agreement with the defendant for the sale and purchase of part of the premises, for the sum of $10,000, by which the plaintiff agreed to give good title, with covenants against his own acts. A portion of the purchase money was paid down, the remainder to be paid upon delivery of the deed.

On the day specified therefor, the plaintiff tendered to the defendant a deed of the premises covered by their contract, and demanded the balance of purchase money. The defendant refused to pay and to take the deed, on the ground that the plaintiff could not convey a good title, and demanded repayment of the amount he had already paid and his counsel fees and expenses in examining the title.

The parties thereupon agreed upon a case containing substantially the facts above stated, and submitting to the court: 1. Whether the three children of Marsden inherited his lands; 2. or the collateral kindred.   3. Whether any estate or interest therein escheated to the people of the State of New York.   4. Whether Wickes became owner in fee by the act of the legislature and the deeds from Marsden's children. 5. Whether the foreclosure was defective because the collateral kindred were not made parties.

The court adjudged that the plaintiff had good title in fee to the premises described in the contract of sale, and decreed a specific performance of that contract.

The defendant appealed to this court.

*William H. Green,* for the appellant, cited 2 Kent's Com., 54; *People* v. *Conklin* (2 Hill, 67); *Wright* v. *Saddler* (20 N. Y., 320); *Jackson* v. *Green* (7 Wend., 33); Smith on Const. and Stat'y Construction, 752, 753; *Rogers* v. *Bradshaw* (20 John., 735); *McCarter* v. *Orphan Asylum* (9 Cow., 506); *Rexford* v. *Knight* (15 Barb., 642); *People* v. *Assessors of Brooklyn* (5 Trans. Appeals, 157); *Fort* v. *Burch* (6 Barb., 60, 75); *Beebe* v. *Griffing* (4 Kern., 235); 1 Kent's Com., 162; *Holmes* v. *Carley* (31 N. Y., 290); *People* v. *Gaul* (44 Barb., 98); Smith on Stat'y Constr., 698; *Jackson* v. *Adams* (7 Wend., 367); *Godell* v. *Jackson* (20 John., 693); *Duke of Cumberland* v. *Graves* (7 N. Y., 305); Bacon's Abr., title Statute (1); *People* v. *Utica Ins. Co.* (15 John., 357, 380); *Jackson* v. *Collins* (3 Cow., 89, 96); *McCarty* v. *Marsh* (1 Seld., 263); *McLean* v. *Swanton* (13 N. Y., 535); *Jackson* v. *Jackson* (7 John., 214); *Orser* v. *Hoag* (3 Hill, 79); *Jackson* v. *Green* (7 Wend., 333); *Henry* v. *Brooklyn Benevolent Society* (39 N. Y., 338); 2 Bl. Com., 245; Bacon's Abr., title Aliens C.; *Fairfax Devisees* v. *Hunter* (7 Cranch, 621.)

*Thomas M. Wheeler,* for the respondent, cited Coke Litt., 2 *a, b;*  2 Bl. Com., 245, 249; Bacon's Abr., title Alien; 2 Kent's Com., 54; *Wadsworth* v. *Wadsworth* (12 N. Y.,

376); *Jackson* v. *Adams* (7 Wend., 368); *Matter of Leefe*, (4 Edw. Ch., 407); *Moers* v. *White* (6 John. Ch., 365); *Duke of Cumberland* v. *Graves* (7 N. Y., 305); *Wright* v. *Saddler* (20 N. Y., 320); *People* v. *McCann* (16 N. Y., 58); *Jackson* v. *Gilchrist* (15 John., 89); *Jackson* v. *Lann* (3 John. Cas., 109); *Goodell* v. *Jackson* (20 John., 693); *Jackson* v. *Etz* (5 Cow., 321); *Jackson* v. *Lervey* (5 Cow., 397); *Brown* v. *Sprague* (5 Den., 545).

GROVER, J. By the common law, an alien, acquiring land by purchase, obtains a good title thereto as against all but the State, and defeasible by the latter only by legal proceedings, instituted for the purpose of vesting title to such land in the State on the ground of the alienism of such purchaser. (2 Kent's Com., 54; Bac. Abr., Tit. Alien; *Jackson* v. *Adams*, 7 Wend., 368; *Wadsworth* v. *Wadsworth*, 12 N. Y., 376.) But, upon the death of the alien purchaser, the title of the State is at once perfect by escheat, without any proceedings whatever. (See authorities above cited.) The residence of the alien made no difference in either case. This was the undoubted law of this State until modified and changed by statute. An examination of the statutes passed upon this subject will show that these changes have been frequent, but none of them affect the present case except that passed April 30th, 1845, 4th Gen. Statutes, 300. It is provided by the first section of that act, that any alien resident of this State, who has heretofore purchased and taken or might thereafter purchase and take a conveyance of any lands or real estate within this State, or to whom any lands or real estate has been or may hereafter be devised, before making and filing in the office of the Secretary of State the deposition or affirmation in writing specified in section 15 of title 1, chapter 1, of the second part of Revised Statutes, may, on making and filing such deposition or affirmation, hold the real estate granted, &c., to such alien in the same manner and with like effect as if such alien at the time of such grant or conveyance were a citizen. Section two makes the wife of an alien who has

acquired title to real estate, by grant or devise, dowable therein, although such wife be an alien. Section three makes the alien wife of a citizen dowable, the same as if a citizen. Section four provides, that if any alien resident of this State, who has purchased and taken, or shall thereafter purchase and take, a conveyance of real estate within this State, has died or shall thereafter die, leaving persons who, according to the statutes of this State, would answer the description of heirs of such deceased alien, such persons, so answering the description of heirs to such deceased alien, whether they are citizens or aliens, are hereby declared and made capable of taking and holding, and may take and hold as heirs of such deceased alien, as if they were citizens of the United States, the lands and real estate owned and held by such alien at his death, in like manner, and with the effect as if such alien at his death were a citizen; but, if any of the persons answering the description of heirs to such alien are males of full age, they shall not hold the real estate thereby made descendible to them, as against the State, unless they are citizens of the United States; or in case they are aliens, unless they make and file in the office of the Secretary of State the deposition or affirmation mentioned in the first section. It will be seen that this section gives to a resident alien who takes title by grant of real estate the same power of transmitting such title by descent as a citizen. It is insisted by the counsel for the respondent that the term resident alien, in the fourth section, includes such aliens only as are not only resident, but who have filed in the office of the Secretary of State the deposition or affirmation specified in the first section of the act; and that Marsden, the mortgagor, never having filed such affirmation or deposition, does not come within the provisions of section four, making the title acquired by him by grant descendible to his heirs, and that therefore the title to the real estate in question vested at once in the State, upon his death, by escheat. This position cannot be sustained. An examination of the various provisions of the act shows that, not only in the first, but also in the fourth section, the filing

of the deposition or affirmation in certain cases is made expressly requisite to the validity of the title. Any such requisite is omitted in that part of section four conferring upon the blood of the alien owner of real estate by grant an inheritable quality in respect to such estate; nor is there anything in the act showing that the legislature had any intention to make any such act a requisite. Indeed, expressly requiring it in certain cases and omitting all reference to it in others, furnishes a strong argument showing that it was not considered necessary in the latter class of cases. It follows that the title to the real estate in question did not vest in the State upon the death of Marsden, by escheat, if he left any heirs competent as such to take the title. That he left such heirs appears from the facts admitted in the case. Consequently, Wickes did not acquire title to the land by virtue of the act of the legislature passed in April, 1867, releasing to him the estate acquired by the people by escheat, for the plain reason that the people had not acquired such title. It is necessary, therefore, to determine who are the heirs of Marsden, the mortgagor. It appears from the facts admitted, that Marsden left him surviving three children, two sons and a daughter, all of full age at the time of his death, and all aliens, residents in and subjects of Great Britain, none of whom ever resided in the United States or filed the deposition or affirmation, specified in the first section, in the office of the Secretary of State. That he also left him surviving collateral kindred, who were residents and citizens of the United States. The question is, which of these classes were the heirs of Marsden? If his children, the title of the respondent is valid. If the collateral kindred, he has no title at all. The statute of descents makes lineal descendants, if any, heirs to the exclusion of all others. The children of Marsden are, therefore, his heirs, if competent to take as such. If not so competent, the collateral kindred are his heirs, he not having left any kindred other than his children, entitled to take prior to them. It is clear that the children are not incompetent on the ground of being aliens,

for they answer the description of heirs according to the statutes of the State; and the fourth section expressly provides that such persons, whether citizens or aliens, may take and hold as such. But, it is insisted by the counsel for the appellant, they are only competent so to take and hold in case they are residents. The counsel insists that this construction should be put upon the clause under consideration, to render it harmonious with previous legislation upon the subject. It is true that statutes relating to the same subject are to be construed together; but this rule does not go to the extent of controlling the language of subsequent statutes by any supposed policy of previous ones. It is manifest that the policy of the act of 1845 is much more liberal to aliens than that of previous statutes; and whether this increased liberality is to be confined to resident aliens, or, in certain cases, includes those non-resident, must be determined by the language used in, and the apparent intention of the act itself, rather than an inquiry into the policy of former statutes. The fact that in the earlier statutes relief to aliens was, for the most part, extended to those only who were resident, has but little weight in determining the question now under consideration. The counsel further insists, that it appears from the title of the act that the intention of the legislature was to limit its provisions to resident aliens. The title is: An act to enable resident aliens to hold and convey real estate, and for other purposes. This is no indication of a purpose to limit such aliens as were made competent to take and hold as heirs to such as were resident. These must be ascertained by the language of the act. Besides, the character of every act must be determined by its provisions, irrespective of the title. (*The People* v. *McCann*, 16 N. Y., 58.) The counsel further insists, that the limitation upon the right of persons who are aliens, answering the description of heirs, who are males above the age of twenty-one years, to hold the real estate by the act made descendible to them, as against the State, unless they make and file the deposition or affirmation mentioned in the first section of the act, shows that resident aliens alone are intended. It

is true that none but residents can make the deposition or affirmation. But the language of the statute is, that such aliens shall not hold such real estate, as against the State, without making such deposition or affirmation. The statute, in the absence of such limitation, would have conferred upon such aliens a good title as against every one, the State included. The limitation applies to the right of the State only. This shows that the title acquired is good as against all, except the State, without filing the deposition or affirmation. This view is confirmed by section 10 of the act. In case the person entitled as heir was an alien male non-resident, and above the age of twenty-one years at the time of the descent of the land to him, he could, thereafter, under the provisions of this section, perfect his title as against the State by filing the deposition, &c., as therein specified. There can be no doubt that alien wives are dowable under sections 2 and 3 of the act, irrespective of their residence. This shows that the act designed to confer rights, to some extent, at least, upon non-resident aliens. Again, had it been the intention to enable resident aliens only to take by descent under the act, that intention would have been expressed, as in other cases where such was the design. My conclusion is, that upon the death of Marsden, the daughter took one-third of the real estate by descent, and that the two sons took each one-third in like manner, the title of the latter being defeasible by the State, unless, before the consummation of the proceedings instituted for that purpose, the sons filed the deposition, &c., as specified in section 10 of the act. This title of the children was acquired by Wickes by their conveyance to him. The only remaining inquiry is, whether this title was perfected in Wickes by the act of April 5th, 1867. This act, in addition to releasing all the title to the land in question, acquired by the State by escheat, to Wickes, refers to the deed of the same to him from the three children of Marsden; and provides, further, that said deed should be confirmed and legalized, as though such children had been citizens of the United States at the time of its execution. This precludes the State from ever thereafter

questioning the title of Wickes, upon the ground of any right to the land founded upon the fact that these grantors were aliens. The title which was before defeasible, unless the deposition, &c., was filed, became, by virtue of the act, valid as against the State. It follows that, from the facts, the respondent had a good title. I do not see why he should not have been required to give a full covenant deed to the appellant, instead of covenanting merely against his own acts. Had a modification of the judgment been asked for in this respect, I think it should have been granted; but, as it is not asked for, there may be some reason therefor, not apparent to me. The judgment appealed from should be affirmed, with costs.

All concur for affirmance, except INGALLS, J., who did not vote.

Judgment affirmed.