NEWLAND MAYNARD, PLAINTIFF, *v.* FORSTER J. MAYNARD, RESPONDENT, AND CECILIA PIENKOWSKA AND OTHERS, APPELLANTS.

*Inheritance — when aliens can take land owned by a resident alien — right of the State to take the land — 1845, chap. 115 — 1874, chap. 261 — 1875, chap. 38.*

In 1852 certain real estate was conveyed to one Sendzemir and his wife. They were then aliens, but they had filed with the secretary of state the declaration required by the Revised Statutes to enable them to hold real estate in the State of New York. Thereafter, and without ever having been naturalized, they died, the wife in June and the husband in August, 1881. The husband left, as his heirs-at-law, brothers, sisters, nephews and a niece, some of whom were of full age and some minors, all being aliens and none of them having ever been in this country. After the husband's death one Maynard entered into possession of the land, and, in 1883, all rights of the people therein were released to him.

In an action for a partition of the land:

*Held,* that under section 4 of chapter 115 of 1845, as amended by chapter 261 of 1874 and chapter 38 of 1875, such of the alien heirs-at-law of the husband as were minors and females, took an absolute, indefeasible estate in the land.

That such of the male heirs, as were over the age of twenty-one years, took a title, which was defeasible by the State in proper proceedings to be instituted by it, so long as they omitted to file in the office of the secretary of state the deposition or affirmation mentioned in the first section of the act.

That until the forfeiture was so declared, the State had no rights in the land which it could grant or convey to a stranger, and that the alien heirs were entitled to hold and enjoy the same.

APPEAL from a judgment, entered upon the report of a referee.

The action was brought for the partition of certain real estate in the town of Oyster Bay, county of Queens. Notice of pendency of action was filed April 15, 1882. The people of the State of New York were originally made defendants, and they, the defendants Maynard, and the other defendants, each put in answers claiming, respectively, the whole title to the property in question. Subsequently the plaintiff abandoned his claim, and an act having been passed releasing the interest of the people to Forster J. Maynard, the people withdrew, whereupon the referee proceeded to decide the issues between the defendants, Maynard, on the one hand and the remaining defendants on the other, in accordance with section 1543 of the Code of Civil Procedure. The action was referred to a referee, who rendered a report finding that the defendants Maynard were entitled to the whole property, and that the other defendants had lost all their rights by escheat. To these findings the remaining defendants excepted, and appealed from the judgment entered on the referee's report.

*John M. Stearns*, for the plaintiff.

*William H. Secor*, for the defendants F. J. Maynard and wife, respondents.

*Edgar Logan* and *Edward B. Hill*, for the defendants Lesznowska and others, appellants.

DYKMAN, J. :

This is an action for the partition of real property, and the facts essential to the determination of the questions presented are these : The property in question was conveyed to Joseph de Sendzemir and Newland Mary de Sendzemir, who were then husband and wife, in February, 1852. They were then aliens, but had both filed in the office of the secretary of State the declaration necessary and requisite to enable them to take and hold real estate, but neither of them ever became naturalized citizens. The wife died in June, 1881, and the husband died in August, 1881, in possession of the property, but without having made any disposition thereof. Both died intestate, without children. The father and mother of the husband died before him, and his only heirs-at-law are his two

brothers, Julian and Stanislaw Sendzemir, his two sisters, Pelagia Lesznowska and Cecilia Pienkowska, and his nephews, Stanislaw Sendzemir, 2d, Brainslaw Sendzemir and niece Alexandra Bakowska, children of his deceased brother Alexander Sendzemir. These are all defendants in this action, and are all aliens, and none of them have ever been in this country.

The defendant Foster J. Maynard took possession of the property after the death of the husband, and has held the same since that time under a claim of ownership, although he is not related to either the husband or the wife. All rights of the people of the State of New York to this property were released to Foster J. Maynard by an act of the legislature, passed April 19, 1833. (Chap. 249, Laws 1883.) It was declared in that law that nothing therein contained should impair any right of heir-at-law, devisee, grantee or creditor. The defendants, Pelagia Lesznowska, Cecilia Pienkowska and Alexandria Bakowska, are all females, and the defendant Brainslaw Sendzemir was an infant at the time of the death of Joseph de Sendzemir.

The cause was tried before a referee, who decided that the defendant Foster J. Maynard was the sole owner of the premises, and was entitled to judgment dismissing the complaint. From the judgment entered on this report all the defendants claiming to be the heirs of Joseph de Sendzemir have appealed.

Joseph de Sendzemir and his wife were both aliens, born in a strange country, under the obedience of a strange prince, or as Littleton has it, "out of the ligeance of the king." But they were resident aliens, and had filed the requisite declaration in the office of the secretary of State to enable them to take and hold real estate. That was not necessary to enable them to take a fee simple in land, for they possessed that capacity under the common law. The only disability under that system was, that they could not transmit the same, and the king or the state might appropriate it by prerogative right, by the finding of an inquisition. (*Wadsworth* v. *Wadsworth*, 12 N. Y., 379; Thomas Coke on Littleton, vol. 1, p. 91.) But being alien residents, they fell within the statute of the State, to be hereafter considered.

The conveyance to Joseph de Sendzemir and wife vested the entire estate in each grantee. Each became seized of the entirety,

and on the death of his wife the whole estate belonged to him as
the survivor. (*Bertles* v. *Nunan*, 92 N. Y., 152.) As, therefore,
Joseph died intestate and seized of this property, it descended to
his heirs if there were any persons in existence answering that
description with capacity to take the title, unless there had been an
escheat to the State. By the common law an alien may acquire
title to real estate valid against all but the sovereign, and hold
the same until inquest of office found. But he cannot hold the
same against the paramount right of the State, and on his death the
title escheats to the State without any inquest of office. (*Goodrich*
v. *Russell*, 42 N. Y., 177.) But the severity of the common law
has been ameliorated in this State by statutory enactments intended
to soften its asperity and make it more conformable to the liberal
tendency of modern progress in its abhorrence of forfeitures.

The first to be considered here are the Revised Statutes of the
State, providing that any alien who has come into the United States
may make a deposition in writing that he is a resident of and intends
always to reside in the United States and to become a citizen
thereof as soon as he can be naturalized, and that he has taken such
incipient measures as the laws require to enable him to obtain
naturalization, which shall be certified and filed and recorded by the
secretary of State. Any alien making and filing such deposition,
is thereupon authorized and enabled to take and hold real estate,
and during the next six years thereafter, may dispose of the same
as if he were a native born citizen. (2 R. S. [6th ed.], 1096, §§ 15,
16). Then came the law of 1845, as amended; Laws of 1845,
chapter 115; Laws of 1874, chapter 261; Laws of 1875, chapter 38;
the last two being amendments of section 4 of the law of 1845, the
only section of that law affecting this case.

By the last amendment that section reads as follows: "If any
alien resident of this State, or any naturalized or native citizen of
the United States, who has purchased and taken, or hereafter shall
purchase and take, a conveyance of real estate within this State, has
died, or shall hereafter die, leaving persons who, according to the
statutes of this State, would answer the description of heirs of such
deceased person, or of devisees under his last will, and being of
his blood, such person so answering the description of heirs or of
such devisees of such deceased person, whether they are citizens or

aliens, are hereby declared and made capable of taking and holding, and may take and hold, as heirs or such devisees of such deceased person, as if they were citizens of the United States, the lands and real estate owned and held by such deceased alien or citizen at the time of his decease. But if any of the persons so answering the description of heirs or of such devisees as aforesaid of such deceased person are males of full age, they shall not hold the real estate hereby made descendible or devisable to them as against the State, unless they are citizens of the United States, or, in case they are aliens, unless they make and file in the office of the secretary of State the deposition or affirmation mentioned in the first section of this act."

Under this statute, all persons who answer the description of heirs of a deceased resident alien, and who are of his blood, are made capable of taking and holding the lands and real estate owned by him at the time of his decease as heirs, whether they are citizens or aliens, as if they were citizens of the United States.

Joseph de Sendzemir, at the time of his death, was a resident alien and seized of these premises. He had filed the deposition required by law to enable him to acquire and hold real estate, and the provisions of the Revised Statutes enable resident aliens on filing the required deposition to hold real estate as though they were citizens, free from the right of forfeiture by the sovereign power. (*Wright* v. *Saddler*, 20 N. Y., 320.) The statute of 1845, with the amendments, clothes resident aliens holding title to real estate with the same power possessed by citizens to transmit such title by descent to their heirs, and infuses an inheritable quality into the blood of the alien. Under that statute the female heirs of Joseph de Sendzemir and the male heir, who was a minor at the time of his death, possessed capacity to inherit his estate as ample as if they had been citizens.

There is a proviso against males of full age that they shall not hold the same against the State unless they are citizens, or make and file the deposition required by law. But this does not render them incompetent to take the title. That in no case escheats to the State, without the finding of an inquisition, where there are heirs competent to take. Here all are competent to take, but the adult male heirs cannot hold against the State unless they become citizens

or file the necessary deposition. The male heirs of full age take a title defeasible by the State, unless before the consummation of the proceedings instituted to declare the forfeiture they become citizens or file the necessary deposition. But if they do either, their right and title becomes absolute and indefeasible. (*Goodrich* v. *Russell*, 42 N. Y., 177.) Their defeasible title is good, except against the sovereign power of the State. Their alienage is a cause of forfeiture which may be established by a judicial proceeding instituted on behalf of the State for that purpose, and that may be defeated even after its commencement in the manner already mentioned. No such proceeding has been instituted, and therefore the State never acquired any right or interest in the premises. It follows that the State possessed nothing which it could grant or release to Foster J. Maynard, and that he took nothing under the act of the legislature releasing the interest of the State to him.

These considerations require a reversal of this judgment, but another question has been introduced into the case which requires examination. Assuming that the heirs of Joseph de Sendzemir are all Russian subjects, it is insisted that whatever rights they had in the property in question has been lost by the operation of the treaty between Russia and the United States, concluded in December, 1832, the provisions of which was extended to the kingdom of Poland by the twelfth article. With full submission to the high authority of the Constitution of the United States, declaring that the Constitution and the laws of the United States, made in pursuance thereof, and all treaties made under the authority of the United States, shall be the supreme law of the land, we find, on examination of the treaty, that it has no application to these defendants. The provisions invoked is contained in the tenth article of the treaty and is as follows: "And where, on the death of any person holding real estate within the territories of one of the high contracting parties, such real estate would, by the laws of the land, descend on a citizen or subject of the other party, who, by reason of alienage, may be incapable of holding it, he shall be allowed the time fixed by the laws of the country, and in case the laws of the country actually in force may not have fixed any such time, he shall then be allowed a reasonable time to sell such real estate and to withdraw and export the proceeds without molestation.   \*   \*   \*

These provisions have application when real estate would descend on a person incapable of holding the same by reason of alienage, but our examination of this case has taught us that the alien heirs of Joseph de Sendzemir were capable of taking title to the lands in question, all their disabilities having been removed by our statute. Aside from that, however, we have no proof respecting a reasonable time to sell the land and export the proceeds.

All views of the case lead to the conclusion that the title to the premises in question is vested in the appealing defendants, who are the heirs of Joseph de Sendzemir, and that the claim of the defendant Foster J. Maynard is without legal support and without merit.

The judgment should be reversed and a new trial granted, reserving all questions of costs.

BARNARD, P. J., concurred.

Judgment reversed and new trial granted at Special Term; reference vacated; questions of costs reserved.