*In re* BECK.

*(Surrogate's Court, New York County.* May 17, 1890.)

1. ALIENS—RIGHT TO INHERIT LAND—TREATY WITH PRUSSIA.
    Laws N. Y. 1845, c. 115, § 4, as amended by Laws 1874, c. 261, and Laws 1875, c. 38, which makes the right of adult alien males to inherit land dependent on the filing of a deposition of their intention to become citizens, before the consummation of proceedings by the state to defeat their title, is superseded, as to citizens of Prussia, by the treaty between that country and the United States, concluded in 1828, which provides that subjects of that country, disqualified by alienage from inheriting land in the United States, shall be allowed a "reasonable time" to sell the same, and to withdraw the proceeds.

2. SAME—SALE—REASONABLE TIME.
    A sale of a decedent's land on foreclosure proceedings within two years and four months after her death is a sale within a "reasonable time," within the meaning of the above treaty provision; and decedent's adult male heirs, citizens of Prussia, are entitled to share in the surplus arising from such sale.

On application by the heirs of Dorothea Beck, deceased, for the distribution of surplus moneys arising from foreclosure sale of her land.

*E. M. Burghard,* for petitioner.   *Straley, Hasbrouck & Schloeder,* for certain next of kin.   *William Watson,* special guardian.

RANSOM, S. The intestate died in the city of New York, in August, 1886. Letters of administration on her estate were granted to the public administrator, December, 1888. In February, 1888, proceedings were instituted by the German Savings Bank, of the city of New York, to foreclose a certain mortgage on property belonging to the estate of decedent. In pursuance of such proceedings the premises were sold, and the amount realized on such sale being more than sufficient to pay the claims due on the property, the surplus was deposited with the chamberlain of the city of New York. The premises were the property of Martin Beck and Dorothea Beck, his wife, jointly. Martin Beck died in the city of New York on the 16th day of August, 1886, intestate. Dorothea Beck, the decedent herein, thereby became the owner in fee of the premises sold. Application was made for the distribution of these surplus moneys, and citation issued to the public administrator, and to creditors generally. Upon such application, decision was made by the surrogate directing distribution, pursuant to the petition of Adam Scior, the brother of the intestate. It was alleged in his petition that he is the only heir at law of the intestate residing within the United States of America. Before the decree had been entered, an application was made to allow certain next of kin and heirs at law to intervene. This application was granted, and an order was made making these next of kin and heirs at law parties to the proceedings, and directing that a supplemental citation issue. The persons seeking their rights to distribution are the brothers and sisters, and the descendants of deceased brothers and sisters of Dorothea Beck, the decedent herein, all of whom are citizens of the empire of Germany. The fact of relationship of the parties to the intestate is not disputed, the sole contention being that because of the alienage of said parties they are not entitled to participate in the division of the real estate or the surplus moneys arising from the sale thereof. At common law, aliens were incapable of taking by descent. This disability, however, is removed by the act of 1845. That act, (Laws 1845, c. 115, § 4,) as amended by Laws 1874, c. 261, Laws 1875, c. 38, recognizes the right of alien kin of a person deceased, who was at the time of his death a resident alien, or a citizen of the United States, to take as his heirs the lands which would have descended to them, in that capacity, had they been citizens of the United States. The title of an alien male of full age is, however, made defeasible by the state, upon his failure to file an affirma-

tion or deposition respecting his intended citizenship, in the manner provided by section 1 of the act. *Kilfoy* v. *Powers*, 3 Dem. Sur. 198, and cases cited. In *Goodrich* v. *Russell*, 42 N. Y. 177, an alien resident of this state purchased and received a conveyance in 1863, of certain real estate, in the city of Brooklyn. The following year he mortgaged a portion of the property so purchased. Some months after the execution of this mortgage he died intestate. He left two sons and one daughter, all of full age, residing in England, and British subjects, and no widow. In deciding that the alien children inherited, the court says, GROVER, J., writing the opinion: "My conclusion is that, upon the death of Marsden, the daughter took one-third of the real estate by descent, and that the two sons took each one-third in like manner, the title of the latter being defeasible by the state, unless before the consummation of the proceedings instituted for that purpose the sons filed the deposition, etc., as specified in section 10 of the act," (Laws 1845, c. 115.) It thus seems that alien male heirs have until the consummation of the proceedings instituted by the state to defeat their title, to file the deposition, or affirmation, as provided by the Revised Statutes. In the case at bar, were it not for certain provisions of the treaty existing between the United States and Prussia, the case above would control. The applicants for participation in the surplus moneys are residents of the province of Hesse Cassel, and, up to the time of the annexation of Hesse Cassel by Prussia, in 1866, were subjects of the dukedom of Hesse Cassel; and, by such annexation, became, and have since remained, Prussian subjects. Article 2 of the treaty between the United States and Hesse Cassel, made March 26, 1844, provides: "When on the death of any person holding real property within the territories of the one party, such real property would, by the laws of the land, descend on the subject or citizen of the other, were he not disqualified by alienage, such subject or citizen shall be allowed a term of two years to sell the same, which term may be reasonably prolonged, according to circumstances, and to withdraw the proceeds thereof without molestation, and exempt from the duties of detraction on the part of the government of the respective states." Hesse Cassel having become a part of Prussia in 1866, its citizens thereby became Prussian subjects. The above treaty became merged in the one existing at that time between Prussia and the United States, which was concluded in 1828, and which is still in force and effect. It provides: "Where, on the death of any person holding real estate, within the territories of the one party, such real estate would, by the laws of the land, descend on the citizen or subject of the other, were he not disqualified by alienage, such citizen or subject shall be allowed a reasonable time to sell the same, and to withdraw the proceeds without molestation, and exempt from all duties of detraction on the part of the government of the respective states." In *Kull* v. *Kull*, 37 Hun, 476, the general term of this department construed the treaty existing between the United States and Wurtemburg, which is similar to that of the United States with Hesse Cassel, and held that it became, by virtue of the constitution, a part of the supreme law of the land, and supersedes all local statutes that contravene its provisions. The court also held that the treaty intended to confer on the alien heir, for the period of two years, precisely the same rights as he would enjoy if he were a resident heir, in imposing upon him simply an obligation to sell and convey the fee to some other party capable of holding within that period, or such other period as the state or country should see fit to confer upon him, by prolonging the time to become or declare his intention of becoming a citizen of this country.

It will be seen that the only question in this case is whether a reasonable time has elapsed since the real estate of the decedent herein became descendible to her alien heirs, a time within which they should have sold the same, and withdrawn the proceeds, as provided by the treaty. The female heirs being

without the prohibition of the statute, are entitled to their shares in the surplus moneys herein. *Kilfoy* v. *Powers, supra; Goodrich* v. *Russell, supra.* I am not furnished with any authority concerning the treaty upon the point of what is a reasonable time. The question is not easy to decide, but on the facts as they appear in this proceeding, I am constrained to hold that the alien male heirs are entitled to their shares in these surplus moneys.