(109 App. Div. 741.)

McCORMACK v. CODDINGTON et al.

(Supreme Court, Appellate Division, First Department. December 15, 1905.)

1. ALIENS—RIGHT TO TRANSMIT BY DESCENT.

Laws 1845, p. 94, c. 115, § 4, as amended by Laws 1875, p. 32, c. 38, gave to a nonresident alien heir the right to take and hold his share of real property, subject to escheat at the instance of the state, unless he filed an announcement of his intention to become a citizen. Rev. St. pt. 2, c. 1, art. 1, tit. 1, § 8, provides that every citizen of the United States may hold land in the state, and take it by descent, devise, or pur-chase. Rev. St. (7th Ed.) pt. 2, c. 2, § 1, provides that the real estate of every person who shall die without devising it shall descend in the man-ner therein prescribed. *Held*, that a citizen may inherit real estate held by an alien by virtue of the act of 1845, above referred to, who dies while that act was in force, notwithstanding the failure of the act to ex-pressly authorize an alien to transmit by descent the interest held by him.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Aliens, §§ 21–26, 33–43.]

2. SAME.

In view of Laws 1877, p. 117, c. 111, § 1, providing that the title of any citizen to land shall not be impeached by reason of the alienage of any person through whom it is derived, any right of the state to question the right of a citizen to inherit from an alien who died in 1881, was devested by Laws 1893, p. 365, c. 207, removing the disabilities of aliens as to the inheritance or transmission of land.

3. SAME—REPEAL OF STATUTE.

The repeal of Laws 1893, p. 365, c. 207, removing the disabilities of aliens as to the inheritance and transmission of real property, by Real Property Law, Laws 1896, p. 559, c. 547, did not restore any right the state may have had to question the title of a citizen who inherited land from an alien prior to the enactment of the former law.

O'Brien, P. J., dissenting.

Appeal from Special Term, New York County.

Action by Annie McCormack against the people of the state of New York and others. From the judgment (95 N. Y. Supp. 46), defendant Coddington and others appeal. Modified.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTER-SON, CLARKE, and INGRAHAM, JJ.

John C. Thompson, for appellants.
W. W. Thompson, for respondent Attorney General.
David B. Simpson, for respondent McCormack.

INGRAHAM, J. This action was brought for the partition of real property owned by one Margaret Clifford, who died on June 21, 1882, leaving her surviving her husband and mother, since deceased,

her brothers, Patrick Casey and John Casey, and her sisters, Anne McCormack, Maria Rooney and Ellen Dunn, her heirs at law. Her property vested in her brothers and sisters, subject to the life estate in her husband and mother, each taking an undivided one-fifth thereof. The only question which is involved upon this appeal is as to the one-fifth of the property, which vested in her brother Patrick Casey. It was found by the court below that upon his death the interest in the property of Patrick Casey escheated to and became vested in the people of the state of New York. Patrick Casey, at the time of the death of Margaret Clifford, was a nonresident alien, and continued as such until his death, without having become a citizen or filed a declaration of intention to become one. His mother, Mary Casey, died on June 3, 1899. The court found that Maria Rooney, who was a citizen of the United States, was the only heir at law of Patrick Casey; and the defendant Coddington claims, under a conveyance from Maria Rooney, that he is entitled to the one-fifth interest of Patrick Casey, and the question to be determined is whether or not the one-fifth interest, which vested in Patrick Casey, descended to his heir at law, who was a citizen of the United States, or escheated to the state of New York. Margaret Clifford, the owner of the property, died on the 21st day of June, 1882, and Patrick Casey died unmarried and intestate, in Ireland on May 30, 1883, less than one year after the death of his sister.

Chapter 115, p. 94, of the Laws of 1845, was in force at the time of the death of Margaret Clifford and Patrick Casey. It was entitled "An act to enable resident aliens to hold and convey real estate, and for other purposes." Section 4 (page 95) of that act, as amended by chapter 38, p. 32, of the Laws of 1875, reads as follows:

"If any alien resident of this state, or any naturalized or native citizen of the United States, who has purchased and taken, or hereafter shall purchase and take, a conveyance of real estate within this state has died, or shall hereafter die, leaving persons who, according to the statutes of this state, would answer the description of heirs of such deceased person, or of devisees, under his last will, and being of his blood, such persons so answering the description of heirs, or of such devisees of such deceased person, whether they are citizens or aliens, are hereby declared and made capable of taking and holding, and may take and hold, as heirs, or such devisees of such deceased person, as if they were citizens of the United States, the lands and real estate owned and held by such deceased alien or citizen at the time of his decease. But if any of the persons so answering the description of heirs, or such devisees, as aforesaid, of such deceased person, are males of full age, they shall not hold the real estate hereby made descendable or devisable to them as against the state unless they are citizens of the United States, or in case they are aliens, unless they make and file in the office of the Secretary of State the deposition or affirmation mentioned in the first section of this act."

Under this provision Patrick Casey, as an heir at law of Margaret Clifford, took and held this interest in real property as if he were a citizen of the United States. He could not hold it as against the state, unless he made and filed in the office of Secretary of State the deposition or affirmation mentioned in the first section of the act of 1845. The interest that he took was a remainder, subject to the life estates of Margaret Clifford's husband, as tenant by the curtesy, and of Margaret Clifford's mother. He died before these life estates

terminated, and before he was entitled to the possession of the property. At the time of his death he had an heir at law, who was a resident and citizen of this state.

It is certain that no alien could inherit Patrick Casey's interest in this property; but this appeal is not based upon the right of an alien to inherit, but upon the right of a citizen of this state to inherit. The conclusion of the court below was based upon the failure of the act of 1845 to provide that the alien may transmit. This allows an alien to take and hold, but gives no power to transmit by inheritance the title which vested in him under the statute and, therefore, upon his death without having become a citizen of the United States, the property escheated to the state. Undoubtedly the state could have questioned the right of Patrick Casey to hold this property without having filed the deposition required by the first section of the act of 1845, but no such action was taken. Patrick Casey had title to this one-fifth in remainder when he died, as if he were a citizen of the United States. He died leaving an heir at law, who was a citizen of the United States. There is nothing in this statute which would affect the right of this citizen of the United States to inherit. Section 8, tit. 1, art. 1, c. 1, pt. 2, of the Revised Statutes, provides that every citizen of the United States is capable of holding land within this state and of taking the same by descent, devise or purchase. Maria Rooney was capable of inheriting the property; and section 1, c. 2, pt. 2, of the Revised Statutes, provides that after the chapter took effect the real estate of every person who shall die without devising the same shall descend in manner following: First, to his lineal descendants; second, to his father; third, to his mother; and, fourth, to his collateral relations. Under the act of 1845, as amended by chapter 38, p. 32, of the Laws of 1875, upon Margaret Clifford's death, the title to one-fifth of the real estate vested in Patrick Casey. He was made capable of taking and holding as heir at law, as if he were a citizen of the United States. There was vested in him, therefore, under this statute, the absolute title to the premises, and being the owner of the premises, upon his death the title that he owned descended to his heirs at law, being citizens, under section 1 of the statute of descent, before referred to. If he was entitled to take and hold by virtue of the provisions of this statute, he came, I think, directly within section 1, which provides that:

"The real estate of every person who shall die without devising the same shall descend in the manner following."

He was certainly a person, and this interest in real estate was his, and such real estate, therefore, descended to his heirs at law being citizens and entitled to inherit. I think, therefore, that Maria Rooney inherited from Patrick Casey any real estate or interest therein of which he died seized as his heir at law. If, however, I am wrong in this construction of the statute, I think that the subsequent statutes in relation to aliens have operated to divest the people of the state of any right to question the title of Patrick Casey, or the right of Maria Rooney, as his heir at law, to inherit. In Luhrs v. Eimer, 80 N. Y. 171, the distinction between the effect of a subsequent statute to affect the right of the people of the state and of the right of a

person who had acquired title to real property before the passage of the act was referred to. It was there said:

"The act of 1874 could not operate to divest her estate thus acquired. Prior to the passage of that act she had recovered possession of the premises by judicial proceedings against the person in possession, founding her claim upon her title by descent. That act may perhaps operate as a surrender by the state of its title to lands, acquired by escheat before the passage of the act, in favor of persons who, except for alienage, would have taken them by descent."

Section 1, c. 111, p. 117, of the Laws of 1877, in force at the time of the death of Margaret Clifford, continued in force by section 7 of the real property law (chapter 547, p. 561, of the Laws of 1896), provides that:

"The right, title, or interest of any citizen or citizens of this state, in or to any lands within this state now held or hereafter acquired shall not be questioned or impeached by reason of the alienage of any person or persons from or through whom such title may have been derived, provided, however, that nothing in this act shall affect the rights of the state in any case in which proceedings for escheat have been instituted."

Then, chapter 207, p. 365, of the Laws of 1893 was passed. It provided:

"Any person who would otherwise answer to the description of heir or devisee of a person, who, at the time of his death, was a citizen of the United States, shall be entitled to inherit or take from said citizen, and hold, enjoy, convey, transmit and devise any interest in real property situated in this state, in the same manner and to the same extent and with the same effect if he was himself a citizen of the United States, notwithstanding the fact that he be a non-resident alien: and the fact that any person otherwise qualified to take, hold, enjoy, convey, transmit and devise any interest in real property situated in this state, is a non-resident alien, shall not prevent his taking, holding, enjoying, conveying, transmitting and devising such interest, providing his title, or that of some person under whom he claims, shall be derived by descent or devise from some person who was, at the time of his death, a citizen of the United States."

The provisions of this act removed the disability, which had prevented aliens from either inheriting or transmitting real property. When it was passed, Patrick Casey was dead, but Maria Rooney, as his heir at law, was entitled to inherit from him his title to his property, but for his being a nonresident alien; and the provisions of the statute of 1877, read in connection with the statute of 1893, clearly indicated an intent to remove all disability, and to allow an alien to inherit and transmit real property, with the same effect as if he was a citizen of the United States; and this act of 1893, as was said in Luhrs v. Eimer, supra, would therefore "operate as a surrender by the state of its title to lands, acquired by escheat before the passage of the act, in favor of persons who, except for alienage, would have taken them by descent." It is true that this act of 1893 was repealed by the real property law (chapter 547, p. 559, of the Laws of 1896), but its enactment operated as a surrender by the state of its right to enforce this escheat, and its effect was, I think, to prevent the state from claiming that this property had escheated, and that Patrick Casey had not the power to transmit, as well as to take and hold it as heir at law of Margaret Clifford.

It follows that the interlocutory judgment appealed from should

be modified by adjudging that the defendants the people of the state of New York, are entitled to no interest in the property, and that the defendant Charles E. Coddington is seized in fee simple absolute in and entitled to four-fifths of the said real property, instead of three-fifths, as provided in said judgment, subject to the inchoate right of dower therein of his wife; and as so modified the judgment should be affirmed, with costs to the defendant Charles E. Coddington against the people of the state of New York.

McLAUGHLIN and CLARKE, JJ., concur. PATTERSON, J., concurs in result.

O'BRIEN. P. J. (dissenting). I dissent from the conclusion reached by the majority of the court. Margaret Clifford acquired the land in question by purchase, and at the time of her death in 1882, section 4, c. 115, p. 95, of the Laws of 1845 (as amended by chapter 38, p. 32, of the Laws of 1875), was in force. This statute gave to her alien heirs, whether resident or nonresident (Smith v. Smith, 70 App. Div. 286, 74 N. Y. Supp. 967; Goodrich v. Russell, 42 N. Y. 177), the right to take and hold their share of her real property, subject to escheat at the instance of the state in an appropriate action brought by it for that purpose, unless the alien filed an announcement of his intention to become a citizen.

It is undisputed that upon the death of Margaret Clifford the land passed to her mother for life, with remainders to her three sisters and two brothers (Rev. St. [7th Ed.] p. 2211, pt. 2, c. 2, § 6), one of whom was Patrick Casey, a nonresident alien, who so remained up to the time of his death, and did not file the statutory certificate announcing his intention of becoming a citizen. As already indicated, under the law of 1845, supra, as amended he was entitled to take and hold as heir of Margaret Clifford his share of the land, subject to the rights of the state. Although he did not file the certificate mentioned, the state brought no action to have his interest declared escheat, and he held the same up to the time of his death. But the statute above cited, while it gave him the right to take and hold an interest in the land, did not give him the right to transmit that interest by descent. Renner v. Muller, 44 N. Y. Super. Ct. 544. Nor was that right conferred upon him by chapter 111, p. 117, of the Laws of 1877, as that statute only empowered an alien to convey land.

By the common-law rule applicable to this state an alien has no inheritable blood. He can neither take land by inheritance, nor transmit it by descent, and upon his death, it escheats to the state. Goodrich v. Russell, supra; Jackson v. Adams, 7 Wend. 367; People v. Irwin, 21 Wend. 128; Mooers v. White, 6 Johns. Ch. 360. Therefore, before the court can properly hold that an alien is relieved from this disability, it is necessary that some statute be found which specifically changes the common law in this respect. I do not find any statute conferring upon Patrick Casey that right, and as the state during his lifetime could have successfully prosecuted an action to have his interest in the property declared escheat, my conclusion is that his

interest must be so declared in this action, to which the state was a party, and wherein it prayed for this judgment.

The further claim of appellants that they are entitled to all the property by adverse possession, I think, was correctly decided against them by the trial court. Adverse possession did not begin to run as to the remaindermen until after the death of the life tenant in 1899 (Snow v. Monk, 81 App. Div. 206, 211, 80 N. Y. Supp. 719), and therefore a sufficient time has not elapsed to enable the appellants to acquire title in this way.

I think, therefore, the judgment should be affirmed, with costs.